JOHNSON *v*. GRAHAM BROTHERS COMPANY.

Opinion delivered March 13, 1911.

1. BILLS AND NOTES—CONSIDERATION—DISMISSAL OF CRIMINAL PROSECUTION.—A note and deed of trust whose consideration is the prevention or dismissal of a criminal prosecution is void, even though the amount of the note represents a debt due the payee. (Page 285.)

2. HUSBAND AND WIFE—WIFE'S SEPARATE PROPERTY—MORTGAGE.—A married woman can mortgage her separate estate for her husband's debts as well as for her own debts. (Page 286.)

3. JUDGMENT—CONCLUSIVENESS.—In a suit to foreclose a mortgage, defendant is estopped to deny the effect of a judgment against him in

a former suit between the plaintiff's grantors and the defendant, in which it was adjudged that the mortgage was valid. (Page 287.)

4. HUSBAND AND WIFE—WIFE'S DEED WITHOUT ACKNOWLEDGMENT.—Since the adoption of the Constitution of 1874, a married woman may convey her separate estate as a *feme sole* without acknowledgment of the deed. (Page 287.)

Appeal from Jackson Chancery Court; *George T. Humphries,* Chancellor; affirmed.

STATEMENT BY THE COURT.

On May 27, 1909, Frances M. Johnson executed a note to Graham Bros. Company, a corporation, for the sum of $6,000, with interest at the rate of seven per cent., payable semiannually. The note was due May 27, 1911. The note was secured by deed of trust executed by Mrs. Johnson to S. M. Stuckey, trustee, in favor of Graham Bros. Company, the beneficiary and payee of the note. The deed of trust included lots 1, 2 and 3 in Lyon's Addition to Newport; lot 5, block 2, in Davis's Addition, and lots 3 and 4 of Stephen's Addition to Newport. The deed of trust provided that "if default be made in the payment of the interest thereon semiannually when due, the whole of said indebtedness shall immediately become due." Mrs. Johnson acknowledged that she had executed the deed of trust "for the consideration and purposes therein mentioned and set forth." The first installment of interest was not paid when due, and this suit was instituted by the appellees to foreclose the mortgage. Appellant resisted the foreclosure upon the ground that the consideration of the note was not her debt, and that the note and deed of trust were not executed with reference to her separate property. She averred that the real consideration for the note was an agreement of T. J. Graham, acting for Graham Bros. Company, to dismiss certain indictments that were pending in the Jackson Circuit Court against her husband, R. M. Johnson. She alleged that the indictments had not been dismissed; that the note and deed of trust were void, and she prayed that the complaint be dismissed, and that the note and mortgage be cancelled.

Appellees replied to the answer, denying its allegations as to the consideration for the note and deed of trust and pleading *res judicata* of that matter by judgment of the Jackson Chancery

Court rendered at a former term, and setting up that judgment in estoppel of appellant's defense here.

R. M. Johnson, the husband of appellant, was a director and also cashier of the Bank of Newport. The bank failed, owing depositors over one hundred thousand dollars. The directors were sued for the amount. R. M. Johnson was named in the complaint, but service was not had upon him. Judgment was rendered against the others. R. M. Johnson and the other directors, including T. J. Graham, were indicted in the Jackson Circuit Court in connection with the failure of the bank. T. J. Graham, in an effort to compromise and settle the claims of the depositors, induced the directors, each, to agree to pay a certain *pro rata* of the sum that was named as the amount to be paid through the compromise. R. M. Johnson agreed to contribute to that sum the amount of $6,000. He did not have the money, and John R., Thomas J., Nimrod, John S. and James Graham advanced the sum of $6,000 for him. Johnson through his attorney delivered to the Grahams a promissory note for six thousand dollars executed by Mrs. Johnson, also a deed executed by R. M. Johnson and Mrs. Johnson for about fourteen hundred acres of land in Jackson County, and the town lots in controversy. Mrs. Johnson owned the farm and all the lots except those in Lyon's Addition to the city of Newport. The title to the latter was in R. M. Johnson.

The Grahams executed to the Johnsons as a part of the same transaction an agreement in which the Grahams stipulated in part as follows:

"Now, therefore, in consideration of the premises and the sum of one dollar to us in hand paid, the receipt of which is hereby acknowledged, we, John R. Graham, Thomas J. Graham, Nimrod Graham, Joseph S. Graham and James Graham, the grantees in the deed aforesaid, do hereby covenant with the said Frances M. Johnson, her heirs, assigns, and with the said R. M. Johnson, his heirs and assigns, that we will, and the heirs and survivors of us shall, reconvey said lands, hers to her, the said Frances M. Johnson, and his to him, the said R. M. Johnson, and unto their heirs and assigns if on or before one year after the date said compromise shall be effected, the said Frances M. Johnson and the said R. M. Johnson, their heirs or assigns, shall pay

or cause to be paid to us, or to our legal representatives, the said sum of six thousand dollars ($6,000) with interest as aforesaid. Said conveyance so to be executed by us to be free of any incumbrances suffered or done by us, but subject to whatever part of the incumbrances now on said lands may then remain."

After the time given for the redemption of the lands mentioned had expired, the Grahams treated the deed of the Johnsons to them and their contract with the Johnsons to reconvey as an equitable mortgage, and accordingly brought suit in the Jackson Chancery Court to foreclose the lien created by the deed and the defeasance contract. The suit was brought in the name of John R., Thomas J., Nimrod, Joseph S. and James Graham, the grantees in the deed, against Mrs. Johnson and R. M. Johnson *et al.* Mrs. Johnson, in defense to that suit, set up, among other things, the same defense she pleads here, namely, that the sole consideration, so far as she was concerned, for the execution of the note and the deed in that suit was the promise on the part of the Grahams, the grantees in the deed, that her husband should be immune from further prosecution on the indictments that were then pending against him. At the May term, 1909, a decree was entered by consent confirming and quieting the title in the Graham brothers, as joint tenants, to the land and town lots which were included and described in the deed that the Johnsons had executed to the Grahams, and which the latter were treating and seeking to foreclose as a mortgage. By the consent decree in that case the absolute title to the lands described in the complaint in that suit embracing the town lots in controversy in this suit passed to the Grahams as tenants in common, as shown by the decree, which in part recited as follows: "And it appearing to the court that the defendants R. M. Johnson and Frances M. Johnson have withdrawn their defense herein, and have consented that judgment might be taken and decree rendered herein for confirmation of a certain deed mentioned in the complaint therein the same having been executed by R. M. Johnson and Frances M. Johnson on the 18th day of June, 1907, and filed for record on the 26th day of June, 1907, conveying to the plaintiffs the lands hereinafter described in said deed. * * * And it further appearing to the court from the agreement of the parties and the pleadings on file that the plaintiffs are entitled to a confirmation

of said deed, it is therefore considered, ordered and decreed that the said deed executed on the 18th day of June, 1907, conveying the following lands (describing them) be and the same is hereby in all things confirmed, and the fee simple title in and to said lands vested in the plaintiffs, John R. Graham, Thomas J. Graham, Nimrod Graham, Joseph S. Graham and James Graham, as joint tenants, as per the terms of said deed."

The appellees introduced the note and deed of trust and testimony to the effect that the Grahams, joint tenants, sold to appellant the lots in controversy for the sum of six thousand dollars; that they made her a deed to the lots upon her executing to the Graham Bros. Company, a corporation, the note and mortgage in suit. The Graham brothers were the stockholders of the Graham Bros. Company, the corporation. T. J. Graham, who conducted all the negotiations on the part of the Graham brothers, joint tenants, and Graham Bros. Company, the corporation, testified that "the debt we are seeking to foreclose is not the debt for money I put up in the compromise settlement. The title to this property was by decree put in Graham brothers, joint tenants, and we as such joint tenants sold her the property." S. M. Stuckey wrote the note and deed of trust in suit, and the deed from Graham brothers, joint tenants, to Mrs. Johnson, and was present part of the time when negotiations were pending for the settlement of the suit between the Grahams and appellant at a former term and when the consent decree was agreed upon, was present when the note and deed of trust in suit were delivered. He testified that "there were present F. D. Fulkerson, M. M. Stuckey, M. B. Brewer, Frances M. Johnson, Gustave Jones and myself; am sure F. D. Fulkerson was present. There was not anything said about dismissing any indictments against R. M. Johnson, either at the delivery of the deed and note and deed of trust or before."

The testimony of F. D. Fulkerson, an attorney who represented the Grahams, was to the effect that he was present during the negotiations when the consent decree was agreed upon, and when the note and deed of trust were delivered, and that appellant "did not say a word about delivering these instruments on condition that the indictments against her husband should be

dismissed." M. M. Stuckey, one of the attorneys for appellees, testified in part as follows:

"We, that is, Colonel Murphy and the attorneys for the Grahams, had a consultation in my office in regard to a settlement of that case. We agreed upon a settlement, and the result was a decree of the court was entered at that term, in which the matters of difference between the two parties were agreed upon. The decree in that case confirmed the title to certain lands and town lots, which were embraced in several mortgages and a certain deed of conveyance that had been given by Frances M. Johnson and R. M. Johnson to the Graham brothers as joint tenants, naming them severally. After that decree, the Graham brothers, joint tenants, conveyed to Frances M. Johnson the property that is in controversy in this suit now pending for the consideration of six thousand dollars. The Graham Bros. Company, a corporation, loaned Mrs. Johnson six thousand dollars, which was evidenced by this note sued on in this case, the payment of which is secured by a deed of trust that is now sought to be foreclosed. A check for $1,276.15 was at the time of the delivery of the deed of trust and note delivered by me to Mrs. Johnson at my office. I gave her the deed of conveyance from John R. Graham and others as joint tenants conveying to Mrs. Johnson this land and at the same time the check, and she gave to me, as the representative of Graham Bros. Company, the note and deed of trust. The sole consideration of the note and deed of trust is expressed in the note and deed of trust.

"It was no part of the consideration of that deed of trust that Graham brothers or T. J. Graham would have the indictments pending in the Jackson Circuit Court against R. M. Johnson dismissed. Neither was it a part of the agreement of the decree entered of record. Colonel Murphy did not make any such request as that to Mr. T. J. Graham or to any of his attorneys, and not one of us made any such promise for Mr. Graham. We had no authority from him to do so, and had not then nor have now, nor had any of his attorneys, nor have they now, any control over the indictments. At the time of the negotiations, the agreement upon a decree, the delivery of the mortgage, the deed, the note, there was present all the time F. D. Fulkerson, S. M. Stuckey, Marcus Brewer and myself. All these persons were present

when we agreed upon the decree with Colonel Murphy. All were present when the deed was delivered to Mrs. Johnson, and she delivered the note to me for Graham brothers in my office. Mrs. Johnson did not say to me the paramount issue for the execution of that deed of trust and note was the dismissal of the original charges against R. M. Johnson. If she had done so, I would not have delivered to her the deed conveying the property in this suit to her nor given her the check for $1,276.15. The title to the property was in Graham brothers, joint tenants, and they did not have to convey to her without she gave to them the consideration therefor."

M. B. Brewer testified: "I was present when the note, deed of trust and check were exchanged. There was nothing said about the indictments against Mr. Johnson being dismissed, but on the contrary Colonel Murphy did say that he knew they could not make such an agreement."

The court permitted testimony on behalf of appellant over the objection of appellees to the effect that the deed which appellant and her husband executed to the Grahams, and which was the foundation for the foreclosure suit in which the consent decree was rendered, was executed and delivered solely upon the express agreement upon the part of the Grahams that the indictments against R. M. Johnson should be dismissed. Gustave Jones, attorney for appellant, was permitted to testify concerning this as follows:

"The deed was executed by Mr. Johnson and sent to me, together with a letter which I am unable to file, but will bring in. I was directed not to deliver the deed until the indictments were dismissed. I exhibited that letter to Mr. Graham, and received his assurance that every effort would be made to dismiss the indictments against Mr. Johnson. Of course, we both knew that such a contract was not enforcible, but Mrs. Johnson's object, manifested by her earnest solicitations, was the procurement of the dismissal of the indictments against her husband." He exhibited as a part of his testimony the letter which directed him to deliver the deed "when the suits or prosecutions have been dismissed."

Appellant for herself also testified that the sole consideration for the execution of the deed on her part was the express prom-

ise of T. J. Graham that the indictments against her husband should be dismissed. She says: "I executed the deed on Mr. Graham's promise to advance the $6,000 for the compromise and in order to have the indictments dismissed." Concerning the negotiations leading to the consent decree and the note and deed of trust in suit, Jones testified as follows:

"I do not think that I was present at the interview between Mrs. Johnson, Colonel Murphy, the plaintiffs and their representatives until after Colonel Murphy left here. I sat in the clerk's office across the hall from Judge Stuckey's with Mrs. Johnson, and Colonel Murphy would come in there and interview her. I remember particularly that there was a complaint made about the rate of interest and the time. Mrs. Johnson would not stand for the 8 per cent. interest or for just one year. I was present when the deed from T. J. Graham and others and the mortgage and note from Mrs. Johnson to the Graham company were delivered. She signed and acknowledged the deed in George Hays' office, and brought it into Judge Stuckey's, and he or Milt. Stuckey examined it, and one or the other of them delivered her a check. Mrs. Johnson had the conversation with Judge Stuckey in the hall. She came out of the clerk's office, and I called Judge Stuckey, and she told him that her only—I do not remember the exact language, but I remember she did say the word 'paramount'—that it was her paramount desire that the indictments be dismissed, that that was the object in the Shreveport transaction, and is the object of this one. During the conference I heard between her and Colonel Murphy, Mrs. Johnson urged the dismissal of the indictments."

The appellant testified concerning the settlement resulting in the consent decree and the execution of the note and mortgage in suit as follows:

"When I came up town to Judge Stuckey's office to close the papers in this compromise suit with the Graham joint tenants, Judge Fulkerson was not there. I expected him to be there at the closing up of the papers that he helped to draw up. I delivered the deed of trust and note, which I had executed in the clerk's office, to one of the Stuckeys, and I think it was Judge Stuckey delivered me the deed from Graham brothers and the check. Mr. Jones suggested that I file the deed for record, and

went with me to the clerk's office. As we left the clerk's office, Stuckey was standing in his door, and Mr. Jones said: 'Mrs. Johnson, I want you to have a talk with Judge Stuckey,' and he called the judge across the hall, and told him I wanted to talk to him. Judge Stuckey stepped out of the corner of his room and we had the 'paramount issue' conversation. I said: 'Judge Stuckey, you understand, the paramount issue of this compromise settlement is the dismissal of the indictments against Mr. Johnson. The paramount issue of the execution of the Shreveport deed for $6,000 was the dismissal of the indictments against Mr. Johnson, and there was no other consideration on earth except the dismissal of these indictments. I shall expect them dismissed at the September term of court.' He said: 'Mrs. Johnson, I will assure you that Mr. Graham and I will do everything we can to get these indictments dismissed, and I do not think we will have any trouble now.'"

"He understood it, for he did not say that the dismissal of the indictments was not still the absolute consideration of the Shreveport transaction and this compromise. Had he insinuated that that was not the consideration, I would have returned the check. Neither the deed nor the deed of trust had been entered of record. After we walked away, Mr. Jones said: 'You have given them now until September.' I never heard of any effort they made in September to procure the dismissal of the indictments. I think that, if they had gone before the court or had made the slightest effort, I would have heard of it. They did not keep faith with me, and I was astonished that they brought this suit only four days after the first semiannual payment of interest was due."

George W. Murphy testified in part as follows: "My firm was employed to represent the defendant in the former case, and I came here last May for that purpose. A decree was drawn and entered by agreement. I talked with Mr. Graham and his attorneys in Stuckey & Stuckey's office. I think Mr. Graham was absent from several of our conversations. It seems to me that Graham and his brothers held a mortgage on Mrs. Johnson's farm and town lots for $6,000. They had purchased mortgages on the same property from V. Y. Cook and others, amounting in the aggregate to something like $12,000. We had been

retained to defend against the foreclosure on them. Mrs. Johnson's contention was that she had executed a deed formerly which was qualified by a separate defeasance on the part of plaintiffs, agreeing to permit her to redeem. I think we agreed that the plaintiffs take the farm at a certain price, deed her back the town lots and advance her about $1,200, and that she should execute them a mortgage for $6,000 on the town lots payable in two years, provided the interest was paid. The first proposition was to make the mortgage payable in one year and the interest 8 per cent. I submitted it to Mrs. Johnson, and she said that the original debt bore 7 per cent.; that she would not give more, and that the indictments against her husband would have to be dismissed. I went back, and Mr. Graham and his representatives agreed to the two years and 7 per cent. I do not remember what was said as to the dismissal of the indictments except when I said that Mrs. Johnson was very earnest about it, and expected them to be dismissed. Judge Stuckey replied that he would move to have it done, and was confident or sure it could be accomplished. I told Mrs. Johnson her views had been acceded to, and she again spoke of the indictments and wanted assurance about that. I told her they could give her no more assurance than had been given me; that I thought her husband would not be bothered with further prosecutions. She asked me if I thought we could trust them, and I told her that we would have to, that no other assurance could be had. Judge Stuckey, Judge Fulkerson and I then drew the decree, which was, I think, entered the next day, and I left.

"My understanding from Mrs. Johnson was that an agreement to have the indictments against her husband dismissed was the consideration for the first deed. In my talks with reference to the settlement, I spoke of her dissatisfaction about the suits not having been dismissed, and said I would hate to settle that difference for her and have her husband prosecuted afterwards, or something to that effect. None of them told me they had made such an agreement, but they gave me to understand that the indictments would be dismissed, or that they would have or try to have them dismissed. I think Judge Stuckey used the language already given, or terms to that effect. In my conversation with these parties I did not require as a condition of the

compromise that they agree with me to dismiss these indictments or have them dismissed; I did not purport to make that a condition of the settlement.  I spoke of the matter as my understanding that such an agreement was the basis of the previous transaction.

"Mrs. Johnson told me that she would not make the settlement unless they would dismiss the indictments or have it done, but I am not able to say that I told them that.  I stated to them her indisposition to make the settlement unless she could feel that the indictments would be dismissed.  I had no idea there was any disposition to prosecute Mr. Johnson on their part."

The court found for the plaintiff in the sum of $6,427.35, and ordered that the same bear interest at the rate of 7 per cent. from date until paid; that the mortgage on the lands refered to herein be foreclosed, and that the lands be sold to satisfy this judgment.

Appellant prosecutes this appeal.

*Gustave Jones, Coleman & Lewis* and *C. A. Cunningham,* for appellant.

1.  The complaint does not show that the debt is one which a married woman can bind her separate estate to secure.  Kirby's Dig. § 5213; 66 Ark. 113, 115, 116.

2.  Mrs. Johnson's acknowledgment to deed of trust is defective in that it fails to show that she signed the same "voluntarily and without compulsion or undue influence on the part of her husband."  35 Ark. 365; 129 S. W. 595.

3.  The "paramount" and sole consideration for the first deed of trust, and the sole consideration for the one sought to be foreclosed, was the dismissal of the indictment against R. M. Johnson—a void consideration which renders the whole transaction void.  80 Ark. 326; 22 Am. Rep. (Ill.), 117; 80 Ia. 738; 51 Ark. 519; 67 Ark. 480; 2 Beach, Mod. Contracts, § 1551.

*Stuckey & Stuckey* and *F. D. Fulkerson,* for appellees.

1.  The complaint shows a debt which a married woman can bind her separate property to secure.  It was her own debt, made for and concerning her separate property.  A married woman's power to convey her real estate is not limited to any particular purpose or consideration.  She need not acknowledge

a consideration, and she may mortgage it for her husband's debts. Kirby's Dig. § 5213; 35 Ark. 480.

2.    Where no objection is raised in the lower court to an acknowledgment to a deed, mortgage or deed of trust, such objection will not be considered here.    69 Ark. 23; 70 Ark. 348; 64 Ark. 305; 71 Ark. 242; 76 Ark. 509; 77 Ark. 103; 75 Ark. 312; 74 Ark. 557; *Id.* 88.    But in this case the acknowledgment is in due form of law.    Kirby's Dig. § 5207.    No privy examination nor disclaimer of undue influence or compulsion on the part of her husband was necessary.    36 Ark. 355; 43 Ark. 160. And the deed of trust would have been good as between the parties, if not acknowledged at all.    47 Ark. 235.

3.    A judgment or decree rendered by consent of parties is good upon collateral attack.    71 Ark. 330.    The defense in this case is the same as that set up in the former suit between the same parties and their privies.    Appellant is therefore estopped.    65 Ark. 467; 76 Ark. 423; 43 Ark. 439.

4.    There is here a question of fact purely, and the findings of the chancellor, if not against the clear preponderance of the evidence, are conclusive.    24 Ark. 431; 42 Ark. 246; 44 Ark. 216; 49 Ark. 465.

WOOD, J., (after stating the facts).    1.    In *Beal & Doyle Dry Goods Co.* v. *Barton,* 80 Ark. 326, it is held that "a note or agreement whose consideration is the prevention or dismissal of a criminal prosecution is void, even though the amount represents a debt due the payee."    Therefore the only question here is whether or not the note and deed of trust in controversy were executed by appellant upon an agreement with those representing the Graham Bros. Company that the indictments pending in the Jackson Circuit Court against her husband should be dismissed. If such was the understanding, the note and deed of trust were void, regardless of whether the indictments were dismissed or not, or whether the appellant or her husband were indebted to Graham Bros. Company.    For all such agreements are contrary to public policy and void.    *Rogers* v. *Blythe,* 51 Ark. 519; *Kirkland* v. *Benjamin,* 67 Ark. 480.

The question is purely one of fact, and we have set out, somewhat in detail, the testimony bearing upon it.    We are of the opinion that the finding of the chancery court is according to the

preponderance of the evidence. George W. Murphy, attorney for appellant, who conducted the negotiations for her resulting in the consent decree and the execution of the note and mortgage, stated that "we agreed that the plaintiffs (appellees) take the farm back at a certain price, deed her back the town lots, and advance her about twelve hundred dollars, and that she should execute them a mortgage for $6,000 on the town lots, payable in two years, provided the interest was paid." He further says: "In my conversation with these parties I did not require as a condition of the compromise that they agree with me to dismiss the indictments or have them dismissed. I did not purport to make that a condition of the settlement."

The testimony of those who conducted the negotiations on the part of Graham Brothers and Graham Bros. Company is to the effect that no promise was made by them to have the indictments dismissed as a condition or consideration upon which appellant signed the note and deed of trust, and four persons of the six who were present when the note and deed of trust were delivered testified that no promise to dismiss the indictments against R. M. Johnson was exacted as a condition of the delivery of these instruments. Since an agreement of that nature is illegal, and, if made, would have rendered the contract and the instruments evidencing it invalid, it is unreasonable to conclude that learned attorneys who were conducting the negotiations for their respective clients would have entered upon such an agreement. It was most natural, however, that the wife should have had a supreme desire to procure the dismissal of the indictments against her husband. Doubtless, it was this "paramount issue" dominating her thoughts that led her honestly to believe that she had exacted a promise to dismiss the indictments as a condition for her signing the note and deed of trust, when, in reality, she had not done so. We are convinced that no such consideration was the basis, in whole or in part, for the note and deed of trust in suit.

2. All the testimony tending to prove that the dismissal of the indictments was the consideration for the deed or mortgage in the former suit was incompetent, and can not be considered here, for it was adjudicated in the former suit that the mortgage was valid, and that Graham Brothers, joint tenants, acquired absolute title thereunder to the lots in controversy. Graham Bros.

Company, the corporation, is privy to the Graham Brothers, joint tenants. The appellant is estopped to deny the effect of the former judgment in this collateral proceeding.

3. The note and mortgage here, according to the preponderance of the evidence, were concerning property which appellant purchased and to which she acquired title in her own right. The debt therefore was one for which she could mortgage her separate estate. Kirby's Dig. § 5213. But, even if it had been her husband's debt, she could have mortgaged her separate property to secure it. *Scott* v. *Ward*, 35 Ark. 480.

4. The acknowledgment of the mortgage was in due form. *Robinson* v. *Wilcoxson*, 36 Ark. 355; *Stone* v. *Stone*, 43 Ark. 160.

But it would have been a valid conveyance between the parties although not acknowledged at all. *Criscoe* v. *Hambrick*, 47 Ark. 235.

Affirmed.

KIRBY, J., dissents.