HUGHES *v.* HARRISON.

4-6454 155 S. W. 2d 690

Opinion delivered November 3, 1941.

*Ernest Briner,* for appellant.

*McDaniel & Crow,* for appellee.

GREENHAW, J. The appellant, Mrs. Nannie Hughes, filed this suit against appellee, Mrs. Sallie Harrison, in the Saline chancery court on June 22, 1939, to obtain judgment upon a $3,500 note and a decree of foreclosure of a real estate mortgage given to secure said note. The note and mortgage were dated January 4, 1933. The note was due one year after date and bore 10 per cent. interest. The note and mortgage were signed by the appellee and her husband, D. M. Harrison. The real estate embraced in the mortgage was a piece of residence property owned by the appellee and her husband as an estate by the entirety. The mortgage showed on its face a proper acknowledgment by the mortgagors. There was a payment of one dollar credited upon the note on March 26, 1937. Mr. Harrison died in July, 1938.

The appellee filed an answer alleging there was no consideration for the note and mortgage, signed by her and that she did not sign of her own free will and accord, and was forced to sign same by reason of threats, coercion and misrepresentation; that the agents, servants and employees of appellant wrongfully and wilfully threatened D. M. Harrison with criminal prosecution, which threats and accusations caused him to force her to execute them; that she did not acknowledge same; that the sum of one dollar was not paid in March, 1937, or at any other time; that the note was barred by the statute of limitations, which was pleaded as a bar; that the makers of the note were not indebted to mortgagee, received no money thereon and same was issued without any consideration and should be canceled.

The court dismissed the complaint for want of equity, and the appellant, plaintiff below, has appealed from this decree.

The evidence showed that for many years the appellant's husband, George Hughes, was engaged in the mercantile business at Benton, Arkansas, under the firm

name of John L. Hughes & Son. Mr. Harrison was an employee of this firm both before and after the death of George Hughes, his employment extending over a period of some twenty years. Upon the death of George Hughes, his widow, the appellant herein, succeeded him in the business and operated it under the same firm name. Her son, John L. Hughes, managed the business after his father's death.

In December, 1932, a concern engaged in the business of sales checking and auditing was employed to make an investigation and check upon the employees of John L. Hughes & Son. These checkers and investigators made purchases at the store and filed reports showing that Mr. Harrison, an employee of the store, had failed to account for something over $3 on sales he made to them. A further investigation of the activities of Mr. Harrison was made. The evidence showed that a conference followed between D. M. Harrison, John L. Hughes, Clifford E. Garrison and C. M. Christiansen who were engaged in the sales investigation. The testimony showed that in this conference, on December 31, 1932, Mr. Harrison admitted that over a period of about ten years he had taken various sums of money and items of merchandise, aggregating $6,000, from John L. Hughes & Son. He signed a written statement to this effect on that date, according to the evidence of John L. Hughes and Clifford E. Garrison, this written statement further stating that he had been treated fairly at all times by John L. Hughes & Son, that he had been accorded every courtesy and consideration during this interview and that his statement was freely given. This statement, which was introduced in evidence, was witnessed by Hughes, Garrison and Christiansen. Immediately thereafter an effort was made to collect as much as possible from Mr. Harrison, and he and his wife, the appellee herein, executed the note and mortgage sued on, on January 4, 1933. E. T. Holiman, a justice of the peace, took and filled in the acknowledgments on the mortgage.

Holiman testified by deposition that Mr. Harrison brought the mortgage to him after it was signed by him and his wife, and he took his acknowledgment, and that

Mr. Harrison told him it did not amount to anything. He later went to the Harrison home and took the appellee's acknowledgment. He was later recalled as a witness, and testified that when he went to take appellee's acknowledgment, he did not hear her say that she did not sign it of her own free will, but that he was hard of hearing and it was possible he did not hear her.

John L. Hughes testified that Mr. Harrison admitted in his presence after a long conference with him and the investigators that he had taken money and merchandise aggregating $6,000, and that D. M. Harrison wrote the statement, introduced in evidence, in his own handwriting and signed it; that D. M. Harrison, according to his statement, had not accounted for all the moneys that came into his hands and he took the matter up with him, and that Harrison made his own figures voluntarily. No audit was made of the condition of the store and he did not personally know whether Mr. Harrison was short in his account and owed the store, and simply relied on Harrison's statement. He further testified that Mr. Harrison paid $1 on the note in March, 1937. The appellant did not testify.

Julia Harrison, a daughter-in-law of appellee, testified that in a conference between her, Mr. Harrison, and the investigators, these investigators told her that they had been called in by the George Hughes estate to investigate Mr. Harrison in regard to a shortage in buying and selling cotton; that he had been receiving a commission on certain transactions with cotton and that they figured that over a period of time he had received benefits from the commissions to the extent of $6,000, which he would have to pay back to the Hughes estate or they would disgrace the whole family by sending him to prison; that if he would pay back the $6,000 they would dismiss all charges. Mr. Harrison then told them that he had a verbal agreement with Mr. Hughes, the father of John L. Hughes, when he first began working for the company that he was to receive a salary plus certain commissions on cotton, and that when Mr. Hughes died his son took over the business as manager and there-

after agreed with Mr. Harrison that he would continue on the basis agreed upon between him and his father.

The appellee, Mrs. Harrison, testified that she signed the mortgage, but it was done through protest and not of her own free will; that she did not know of her own knowledge under what circumstances the mortgage was made, but as far as she knew she never received any money or credit by signing it; that Mr. Holiman did not act in the capacity of justice of the peace in taking her acknowledgment; he just asked her if she signed it, about two weeks after she actually signed it; that she told him she signed it, but it was against her will, and her husband was on the porch and told her to hush; that Holiman did not have the mortgage with him. Her husband told her she would have to sign it for their own protection to get rid of the "government" men, and her husband was awfully upset for about two weeks. She testified that her husband was not indebted to Mrs. Hughes when the mortgage was given, and further testified that the signature to the statement above referred to was not her husband's signature.

C. C. Prickett and wife, Ophelia Harrison and C. R. Harrison testified in connection with the signature of D. M. Harrison to the written statement. Some of them said it was not his signature and the others said it did not look like his signature.

We have carefully considered all of the evidence in this rather unusual case. The evidence showed that these investigators had no regular place of business; that they went from place to place in pursuing their work. The evidence further showed that in addition to receiving pay for their actual work of making investigations, they were to receive 50 per cent. of any amount which they or their employer recovered from employees through their investigation and efforts.

We do not attempt to say, from the record in this case, whether or not Mr. Harrison was actually short in his accounts. At least, there was no substantial evidence to this effect, except the written statement which the investigators and Mr. Hughes say he made and signed. It is rather strange, if Mr. Harrison had actually appro-

priated money and property belonging to the Hughes estate as claimed in this case, that he would be continued in the same capacity as an employee of the Hughes estate until his death in July, 1938. It is also strange that during all of this time no interest or any substantial amount of this indebtedness was paid. It is only claimed that Mr. Harrison paid $1 thereon, and it is obvious that if this payment were not actually made the suit was barred by the statute of limitations at the time it was filed. According to the testimony of some of the witnesses, threats were made by these investigators in order to effect collection. There is evidence that statements were made by these investigators that if this alleged shortage were not settled, Mr. Harrison would be prosecuted and sent to prison, and if settled the charges would be dismissed.

According to the evidence, the property sought to be foreclosed was the home of Mr. and Mrs. Harrison, and no effort was made to foreclose upon this mortgage until after appellee's husband died, more than five and one-half years after its execution, although the note was due one year after date.

The trial court did not make any findings of fact or assign any reason why the complaint of the plaintiff was dismissed for want of equity. It may be the court found that there was a want of consideration, or that the suit was barred by the statute of limitations, or that the note and mortgage were void for the reason that they were executed under threats of a criminal prosecution, and the promise that if they were executed the prosecution would be dropped. If the last was the basis of the court's decree in dismissing the complaint, we can not say that there was not a preponderance of the evidence to justify such a finding. In the case of *Goodrum* v. *Merchants' & Planters' Bank,* 102 Ark. 326, 144 S. W. 198, Ann. Cas. 1914A 511, this court, among other things, said: "Any contract, therefore, the consideration of which is to conceal or withhold evidence of a crime or to abstain from the prosecution therefor, is void, although it may represent a just debt and security for its payments. *Rogers* v. *Blythe,* 51 Ark. 519, 11 S. W. 822; *Kirk-*

*land* v. *Benjamin,* 67 Ark. 480, 55 S. W. 840; *Beal & Doyle Dry Goods Co.* v. *Barton,* 80 Ark. 326, 97 S. W. 58; *Johnson* v. *Graham Bros. Co.,* 98 Ark. 274, 135 S. W. 853.''

It would unduly extend this opinion to attempt to set out the substance of all of the testimony in this case. Suffice it to say that we have carefully considered all of the evidence and all questions raised and discussed in the briefs, and are unable to say that the decree of the trial court is contrary to a clear preponderance of the evidence.

The decree is, therefore, affirmed.

SMITH, C. J., dissents.

MEHAFFY, J., not participating.

GRIFFIN SMITH, C. J. (dissenting). Much of the testimony is opinion, hearsay, and clearly inadmissible. From a maze of contradictions a clear preponderance of evidence shows that D. M. Harrison and Sallie Harrison executed their promissory note for $3,500, payable to the order of Nannie Hughes. This note was secured by the mortgage in question. Principal defense, seemingly accepted by the lower court, and affirmed here, is that coercion was used in procurement of note and mortgage.

D. M. Harrison stated, in writing, that he freely confessed an obligation based upon his conduct in taking merchandise and money belonging to John L. Hughes & Son. His peculations extended over a period of ten years. Because Hughes was not harsh in demanding payment when the note matured in January, 1934, and continued to give employment to Harrison, who was an efficient helper, it is now argued there was never a purpose to collect on the obligation.

The confession stands clearly. Harrison, better than any one else, knew whether he had taken the property. He attested the courtesy of John L. Hughes and voluntarily stated that he had been treated fairly. The decree should be reversed and the appellant afforded the relief she is entitled to, which in any event can only amount to partial restitution.